## CATHERINE CUTTING

*v.*

## THE STATE OF ILLINOIS.

*Opinion filed December 23, 1896.*

WATERS—*damages sustained by raising height of dam.* Where a break in a dam under the jurisdiction of the State is repaired by the canal authorities of the State placing a considerable quantity of riprap back of the dam and next to the break, thus raising the height of the dam and causing damage to claimant's property by raising of the water above the dam, the claimant's property being situated above the dam, claimant is entitled to recover actual damages sustained.

The claimant's property here in question consists of an island in the Des Plaines river, of irregular shape, about

one quarter of a mile long, and containing about twenty-five acres of land, situated in the city of Joliet, Will County, Illinois. The foot or south end of the island is about one-third of a mile north of the Tow-path bridge, which bridge is at the confluence of the Illinois and Michigan canal, and the Des Plaines river. The Tow-path bridge is about two-thirds of a mile north of the so-called Jackson street dam.

The Jackson street dam as originally constructed was a solid cut stone structure, built by the State many years ago. It is about ten feet high, and forms the lower or south end of what is called the Upper basin. Through this basin, and over this dam passes the entire volume of water of the canal and the river, except what is drawn off for use for water power. In the spring of 1893 a considerable part of the dam was washed away by high water. The portion thus taken out consisted of several courses of stone running to within about 50 feet of the east and west ends of the dam. In order to repair this break in the dam, the canal authorities of the State, shortly thereafter, caused a considerable quantity of riprap, consisting principally of broken stone, to be placed immediately back of the dam and next to the break. This riprap was piled from one to one and a half feet higher than the original level of the dam.

The claimant alleges that by reason of the raising of the dam in this manner the water in the basin and in the river was correspondingly raised and thereby her said island damaged to the extent of five thousand dollars.

The raising of the dam in substantially the manner claimed, and as above indicated, is not controverted by the Attorney General, and it is not claimed that the increased height has been reduced, nor that it is the intention in the future to reduce the same. There is but little fall of water in this upper basin. The flow is from north to south. It is quite impossible to ascertain with any degree of exactness the precise amount of the

fall. It varies some with different stages of water, and there are many other conditions which affect the problem so as to make it quite difficult, if not impossible, of exact solution. Suffice it to say with accuracy sufficient for ordinary mortals, that the fall is slight from the Tow-path bridge to the Jackson street dam. But the south end of the island is nearly one-third of a mile north of the Tow-path bridge, and no claim whatever is made for damage to the southerly portion of the island, as that is high and dry. The part claimed to have been damaged is the northerly part of the island, consisting of six or seven acres of low land. From all the evidence we must conclude that this land is sufficiently north of the Jackson street dam, that the raising of the dam complained of had no very considerable effect upon the northerly part of the island. It must be true that the fact that some of this riprap may have stood 18 inches above the original level of the dam, did not raise the water at the dam to that height. About one-third of the dam remained as it originally was, and in addition thereto we know from observation as well as from the evidence that a large volume of the water passes through the loose stones of the riprap. Added to this, it is very clear from the evidence that when the water is high the opening under the Tow-path bridge retards the water of the river from flowing freely into the basin, and thereby becomes to an extent the controlling point, rather than the Jackson street dam.

We are strongly of the opinion that the effect of this riprap at the dam upon the part of the island claimed to be damaged is very far from that which is claimed. But we will give to the complainant the benefit of all the reasonable doubt, and for the purposes of her claim will concede that the water in the river was raised a few inches in consequence of this riprap.

The claim for damages herein is for the loss of three years crops, and for damage to the market value of the land. As to the latter we hardly feel that under the evidence there was any appreciable damage to the mar-

ket value of the land. The value placed upon it by the witnesses ranges from nothing to $1,000.00 per acre— widely divergent prices to say the least. It is our judg- ment that the land had no very great value in the mar- ket. It is not pretended that it was available for sub- division into lots or for building purposes. It is not connected with the main land, and can be reached only by boat, unless the water is sufficiently low to drive across. It is not claimed that the land had any special value except for market gardening. From the evidence, as well as from observation, we believe that the claim- ant received for the land upon its condemnation by the Sanitary District of Chicago substantially its market value, and that the slight rise in the river, if any there was, did not operate to lessen the price received for the land.

The question then remains as to the amount of dam- age, if any, which the claimant suffered by reason of the injury to her crops for three seasons succeeding the placing of the riprap in the dam. Upon the taking of the evidence all claim for the first year thereafter seems to have been abandoned, and the claim is for the damage for the years 1893 and 1894. For the purposes of this claim it is testified that upon these 6 or 7 acres prac- tically no crop was raised these two years because of the increased height of the water. This evidence is in direct contradiction to what it appears she testified to in the condemnation proceedings brought by the Sanitary District of Chicago. It appears that she there testified that she raised large crops in 1893 and 1894, that in one of those years she raised 60,000 head of cabbage. Of course it was then to her interest to make the land as valuable as possible in order that she might obtain the largest possible amount in that proceeding, but it some- what embarrasses us in this case to reconcile her former testimony with the evidence here offered. In any event we believe that if it was evident that because of this rise in the water she could not use the land, the extent of her

damage would be the rental value of the land for that time.

Some witnesses have testified that the annual rental value of this land was $100 per acre. This in our judgment is so extravagant as to be almost ridiculous. From this amount the testimony as to the rental value ranges to nothing, the other extreme. Twenty-five dollars per acre for the annual rental value in our judgment would be a most liberal and even excessive price. It is conceded that not more than 7 acres were affected by the alleged rise of the water. Figured at this rate the rental value for two years would be three hundred and fifty dollars. This sum would amply compensate her for any possible damage she has sustained by the raising of the dam.

It is therefore ordered by the Commission that the said claimant, Catherine Cutting, be awarded, in satisfaction of her aforesaid claim against the State of Illinois, the sum of three hundred and fifty dollars together with the costs of the taking of the testimony on behalf of the claimant.